## In re FAHNESTOCK MFG. CO.

(District Court, W. D. Pennsylvania. February 24, 1925.)

No. 10654.

1. **Bankruptcy ☞327(1) — Like other creditors, United States must file claim for taxes.**

The United States must file its claim for taxes, like other creditors.

2. **Bankruptcy ☞339 — Filing objections to claim for tax proper procedure.**

Filing objections to claim for taxes is proper procedure; trustee not being remitted to recovery under Rev. St. § 3226 (Comp. St. § 5949), after payment of taxes.

3. **Bankruptcy ☞340—Claim for income tax, on theory of patents bought being worthless and representing no invested capital, held to have no support in evidence.**

Government claim for income tax, on theory of patents bought by bankrupt with shares of its stock having no value, and therefore representing no invested capital, held to have no support in the evidence.

4. **Bankruptcy ☞346—Taxes not given priority in payment over mortgage with prior lien.**

Bankruptcy Act (Comp. St. §§ 9585–9656) does not give priority in payment of taxes over valid mortgages, the liens of which are prior to that of the taxes.

5. **Internal revenue ☞26—Lien of additional income tax dates from collector's receipt of assessment list.**

Lien of additional income tax for prior years on reaudit of company's books arises when assessment list is received by collector.

In Bankruptcy. In the matter of the Fahnestock Manufacturing Company, bankrupt. On exceptions by the United States to referee's order of distribution. Exceptions overruled.

The opinion of Referee James Gregg is as follows:

"February 13, 1923, the collector of internal revenue for the Twenty-Third collec-

tion district of Pennsylvania filed a proof of debt in the sum of $30,416.38, claiming priority therefor; the said claim being for internal revenue taxes as shown below, but which did not include interest:

Additional income tax for the year ending December 31, 1917, together with interest at 1 per cent. per month until interest is paid, from February 20, 1923............... $18,000.43

Additional income tax for the year ending December 31, 1918, together with interest at 1 per cent. per month until interest is paid, from February 20, 1923............... 11,916.00

Additional income tax for the year ending December 31, 1919, together with interest at 1 per cent. per month until interest is paid, from February 20, 1923............... 499.95

"The charges for interest are not computed in the above items. Subsequently, on July 17, 1923, another proof was filed, identical with the one last above mentioned, and, inasmuch as it appears to be for the same amount and for the same charges, it is conceived that a decision as to the one will conclude the other.

"The trustee in bankruptcy filed objections to this claim of the United States, generally speaking, on four grounds: (1) That the debt is not due and owing, as the government has been paid all taxes due it; (2) that the claim is not entitled to be paid first out of the proceeds of the sale of the assets of the bankrupt, because the rights of other parties, viz. mortgage bondholders, had intervened of record before the said claim was filed; (3) the claim is insufficient in form; and (4) that (a) notice of the alleged lien arising from the taxes was not filed in the office of the clerk of this district; (b) the assessment list covering the tax was not being received until February 15, 1923, the taxes could not be a lien until that date, and consequently are inferior to the lien of the mortgage, which was entered of record before.

"Subsequently George H. Rankin, for himself and for Annie T. Monaghan, executrix of the will of Cornelius Monaghan, two of the bondholders, filed similar objections, and joined in those filed by the trustee.

"It will be noticed these exceptions arrange themselves under two heads: (1) That the government has no claim for the years covered in the claim and should be paid nothing; and (2) that the government's claim for taxes is not entitled to priority in advance of the claim of the bondholders, which is filed as a secured claim.

"At the outset, it should be observed that the referee has had no aid from the government in reaching his conclusion in the matter in hand. When the objections above mentioned were filed, pursuant to the authority conferred by the act, the referee set the objections down for hearing and proceeded to hear and determine them. At the hearing he was attended by a number of creditors, by several bondholders, by the trustee, his counsel, counsel for the mortgagee, and by various counsel for the bondholders. In spite of the fact that the government was served with a copy of the objections and notice of the hearing, it saw fit to have no representative at the hearing. Subsequently, at the request of counsel for the government, the referee delayed his decision for six weeks, in order to enable the officers of the government to file some informative matter, showing how the claim for taxes was made up. This time has long passed, and I have had no further communication from the government. It is therefore necessary to attempt the decision of this matter with what data and evidence has been submitted.

[1, 2] "It seems, from the law, the United States must file its claim for taxes like any other creditor (In re Prince & Walter [D. C.] 131 F. 546), and that the procedure here enployed, viz. to file objections to the claim for taxes, is proper, properly raises the issue, and the trustee is not required to act under section 3226 of the Revised Statutes, being Comp. St. § 5949 (In re General Film Corporation, United States v. Kellogg [C. C. A.] 274 F. 903).

[3] "Apparently, the government has been several times at work on this matter. It appears there have been several audits or inspections of the books of the company, while in the hands of the receiver in bankruptcy. The whole question of the amount of tax legally due depends principally upon the proper valuation of certain patent rights which the bankrupt company purchased, paying therefor $255,000 in capital stock of the company. There can be no question but that the transaction of this purchase was legal and was properly accomplished, as inspection of the minutes of the company will show. As the referee understands the record, the amount of tax represented by the claim of the government depends upon what is conceived to be the proper valuation of these patents, which valuation, set up as a capital asset, accordingly as it increases or decreases the sum representing invested capital, proportionately decreases or increases

the return on invested capital, upon which the tax is reckoned.

"There is before me no competent evidence upon which to base my decision of this matter, other than the testimony offered by the witness Allinder, who acted as auditor for the company, and who testified that the proper income tax was returned by the company for the years 1917, 1918, and 1919. He testified that one of the methods used by the government, as shown by the Government's Exhibit No. 5, in arriving at the amount of tax due for 1917, depended upon a complete disregard of the patent rights of the company, for which the company issued $255,000 worth of stock; the final result of the government's computation, according to this expert, showing the invested capital of the company as $26,248.57, which is $40,000 short of the amount actually invested in tangible assets, such as machinery, building, and real estate, altogether aside from the value of patents. Later on, apparently, another revenue inspector, Mr. J. H. Arnold, made an audit, the report of which was proved as Exhibit No. 6. On page 2 thereof he says, inter alia:

"'*Valuation of Patents.*—2,550 shares, par value $100, were issued to Mr. D. M. Fahnestock, former president of the company, for patents Nos. 610,857, 610,585, and 629,366. The patents were never used, and there has been no revenue from same. It is claimed, however, if the company had funds to operate, that they could make good use of them. Your examining officer does not feel justified in claiming the patents worthless, but figures the value of the asset from amounts received from sale of stock on or near the time stock was issued for the patent. These patents were acquired by Mr. Fahnestock May 21, 1912, and have been depreciated from July 29, 1915, on the basis of their remaining life of 13⅚ years. See explanation following balance sheets.

"'*Stock Issued for Services Disallowed.*—53½ shares in 1915 and 1916, and 7 shares in 1917, were given for services to officers of the corporation. These officers were drawing a salary, and there was no agreement for additional compensation. These officers purchased at the same time an equal amount of shares at $100 per share. At the time these shares were purchased, an equal amount of shares were given to purchasers as a bonus; that is, for each share fully paid one share of treasury stock (common) was given as a bonus (treasury stock and original stock being the same kind of stock). It does not seem reasonable to assume that an officer of the company would pay twice as much for stock as an outsider.'

"This statement seems a great deal nearer the truth. Based on this, he shows a previous assessment for $3,821.14 and an additional assessment of $662.32. In the judgment of the referee, it would have been productive of a very great deal of good in the way of the administration of this estate if the government had brought Mr. Arnold to the hearing, where his testimony could have been examined by the referee in contrast with that of Mr. Allinder. As it is, I am unable to say that these patents were worthless; on the contrary, I believe and accordingly find they were not worthless, but were of great value to the estate. The tax claim submitted by the government is the result of the computation demonstrated in Exhibit No. 5, which is altogether unreasonable. There is nothing in the evidence to warrant the conclusion that the capital invested should be valued at approximately $25,000, and the value of patent rights altogether disregarded. Accordingly I must sustain the objections to the proof of this claim in the amount claimed. On proper and seasonable application by the government, I would take the proof of a claim for taxes based upon some reasonable method such as that employed by Mr. Arnold, with leave, of course, to the trustee or other interested party to object. It follows this proof must be disallowed.

[4, 5] "As to the second question, Does the government's claim precede or follow the mortgagee in priority? it is only necessary to compare the proofs to determine this. The proof of the bonds is offered as a secured claim, the security being a mortgage in the amount of $50,000, dated August 1, 1921, executed, delivered, and recorded August 19, 1921, more than four months before the filing of the petition. The claim for taxes is for the years 1917, 1918, and 1919, upon a reaudit of the books of the company made more than a year after the mortgage became a lien; the lien for these taxes, as determined by another proceeding in this matter, arising on the day the assessment list was received by the collector, namely, in February, 1923.

"Proceedings in bankruptcy do not interfere with existing valid liens (Rode & Horn v. Phipps, 195 F. 414, 115 C. C. A. 316); and on the authority of City of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543, it must be held that the act

(Comp. St. §§ 9585–9656) did not intend to give priority in the payment of taxes over existing valid liens. Accordingly there is nothing to interfere with a distribution which will pay to the secured creditors the sum due.

"Appropriate orders will be drawn."

J. M. Redden and Geo. H. Rankin, both of Pittsburgh, Pa., for bond claimants.

Warren H. Van Kirk, Sp. Asst. U. S. Atty., of Pittsburgh, Pa., for the United States.

GIBSON, District Judge. The United States, by its collector of internal revenue, has caused to be certified for review by this court an order made by the referee in bankruptcy for Westmoreland county. The facts, as well as the legal principles applicable thereto, are correctly set forth in the opinion of the learned referee, which we hereby adopt as our own opinion in the matter.

It is hereby ordered and decreed that the exceptions of the United States government to the findings of the said referee and the order of distribution of said funds be and the same are hereby overruled, and the trustee is hereby directed to make distribution of the funds in his hands pursuant to the decree of the said referee.